UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO LANDEROS JIMENEZ,<br>Petitioner,<br>v.<br>CHAD WOLF, et al.,<br>Respondents. | Case No. 19-cv-07996-NC<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 18 |

Before the Court is plaintiff Mario Landeros Jimenez's motion for a temporary restraining order. *See* Dkt. No. 18. Landeros Jimenez argues that respondent federal officers failed to provide him with a constitutionally compliant bond hearing and should be temporarily restrained from continuing his detention. Because Respondents failed to prove dangerousness or likelihood of flight by clear and convincing evidence, the Court GRANTS Landeros Jimenez's motion for a temporary restraining order.

**I. Background**

Landeros Jimenez is a Mexican citizen. *See* Dkt. No. 1, Ex. BB at 3. In January 2018, Landeros Jimenez and his brother were arrested in Sacramento, California for possession of 47 pounds of methamphetamine for sale. *Id.*, Ex. I at 4. A year later, on January 16, 2019, Landeros Jimenez pled no contest to acting as an Accessory After the Fact, Cal. Pen. Code § 32, and was sentenced to three years in custody. *Id.*, Ex. J.

Landeros Jimenez was released from Sacramento County Jail the next day for time served. *See id.* at 14. Upon release, Landeros Jimenez was apprehended by United States Immigration and Customs Enforcement ("ICE"). *See id.*, Ex. A. ICE placed Landeros Jimenez in removal proceedings and detained him at the Mesa Verde Detention Center. *Id.*

On October 1, 2019, the Immigration Judge ("IJ") denied Landeros Jimenez's asylum application and ordered his removal. *See id.*, Ex. BB. Landeros Jimenez's appeal of that order is still pending. *See id.*, Ex. CC.

Landeros Jimenez petitioned this Court for habeas relief on December 5, 2019, arguing that his continued detention without a bond hearing violated his constitutional and statutory rights under the Fifth Amendment, Eighth Amendment, and Section 504 of the Rehabilitation Act. *See* Dkt. No. 1. The Court granted Landeros Jimenez's petition on January 30, 2020, and ordered Respondents to provide him with a bond or custody redetermination hearing. *See* Dkt. No. 16. The Court also required Respondents to justify Landeros Jimenez's continued detention by clear and convincing evidence. *See id.* at 6–7 (citing *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011)).

On February 26, 2020, the Immigration Court held a custody redetermination hearing for Landeros Jimenez. *See*, Dkt. No. 18, Ex. GG. The IJ ordered Landeros Jimenez's continued detention without bond, finding that Respondents "met their burden to establish [that Landeros Jimenez] is both a danger and flight risk." *Id.* The IJ did not issue a written memorandum decision but noted that he would do so if Landeros Jimenez filed an appeal. *See* Dkt. No. 18, Ex. FF at 12.

Landeros Jimenez now moves for a temporary restraining order, arguing that Respondents failed to justify his continued detention without bond. *See* Dkt. No. 18. The Court conducted a hearing on March 4, 2020. *See* Dkt. Nos. 20, 22. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 5, 10.

## II. Discussion

Before the Court reaches the merits of Landeros Jimenez's motion, it will first address two threshold issues raised by Respondents: (1) whether the Court has jurisdiction

2

and (2) whether the Court should wait for the IJ to issue a written decision or for the Board of Immigration Appeals ("BIA") to decide Landeros Jimenez's appeal.

### A. Whether the Court Has Jurisdiction

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1226(e) because the IJ's decision denying Landeros Jimenez bond is a discretionary one not subject to judicial review. *See* Dkt. No. 21 at 16.

The Court disagrees. Although § 1226(e) restricts federal court jurisdiction, "it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202; *cf. Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (finding jurisdiction to consider the "minimum requirements of due process"). Likewise, "habeas courts are empowered to make an assessment concerning compliance with their mandates." *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1126 (citing *Harvest v. Castro*, 520 F.3d 1055, 1064 (9th Cir. 2008)). Here, Landeros Jimenez challenges the IJ and Respondent's failure to satisfy the minimum requirements of due process. In particular, he argues that Respondents failed to prove by clear and convincing evidence that he is dangerous or a flight risk. This alleged error violates his constitutional right to due process (*see generally* Dkt. No. 16) and the Court has jurisdiction to review that error.

### B. Whether Landeros Jimenez's Motion is Premature

Next, Respondents argue that the Court should stay ruling on Landeros Jimenez's motion because it is premature. *See* Dkt. No. 21 at 12–16. Respondents contend that the Court should wait for Landeros Jimenez to exhaust his direct appeal to the BIA or, alternatively, wait for the IJ to issue his written decision.

Administrative exhaustion is sometimes required before a district court can review an IJ's bond determination. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). For habeas claims, administrative exhaustion is prudential, not jurisdictional. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Prudential exhaustion may be required when:

(1) agency expertise makes agency consideration necessary to generate a

3

|   | proper record and reach a proper decision; |
|---|---|
| | (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and |
| | (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. |

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Thus, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Here, administrative exhaustion would be futile and cause irreparable harm. First, the parties provided the documents and evidence considered by the IJ in the custody redetermination hearing. *See* Dkt. No. 18, Exs. DD, EE. No further fact-finding is necessary. All that remains is the legal question of whether the IJ and Respondents applied the proper burden of proof at the custody redetermination hearing. *See Hernandez*, 872 F.3d at 989 ("[A]n administrative appellate record is not necessary to resolve the purely legal questions presented by Plaintiffs' challenge to the government's policy of refusing to require ICE and IJs to consider financial circumstances and alternative conditions of release in bond determinations.").

Second, Landeros Jimenez has been detained for almost one and a half years, exceeding the length of the time served for his underlying conviction. He continues to suffer harm from his continued detention that cannot be repaired. *See Villalta v. Sessions*, No 17-cv-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017). And, at the hearing, Respondents were unable to provide an estimate for when the BIA would resolve Landeros Jimenez's appeal or when the IJ would provide a written decision. Such uncertainty is unacceptable after a year of continued detention without constitutionally required process. Accordingly, the Court finds that waiver of the prudential exhaustion requirement is appropriate in this case.

4

**C. Whether the Court should Issue a Temporary Restraining Order**

The legal standard for a temporary restraining order mirrors that of a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When a plaintiff seeks a mandatory injunction, however, he "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original).

**1. Likelihood of Success on the Merits**

In the Court's January 30, 2020, order granting Landeros Jimenez's habeas petition, the Court ordered Respondents to prove Landeros Jimenez was dangerous or a flight risk by clear and convincing evidence or to release him. *See* Dkt. No. 16. Landeros Jimenez contends that he is clearly favored to succeed on the merits because Respondents failed to meet that burden.

"'[C]lear and convincing evidence' is a high burden and must be demonstrated in fact, not 'in theory.'" *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (citing *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)). "An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision." *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016).

To determine whether an immigrant is a flight risk or poses a danger to the community, an IJ must consider factors including: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and

the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *See In re Guerra*, 24 I.&N. Dec. 37 (B.I.A. 2006).

Respondents have not met their burden to prove Landeros Jimenez's dangerousness or flight risk by clear and convincing evidence. Respondents presented three documents for the IJ's consideration: (1) Landeros Jimenez's conviction documents; (2) Sacramento County Sheriff's Department arrest report; and (3) the IJ's October 1, 2019, order. *See* Dkt. No. 18, Ex. DD. Those documents, however, do not satisfy Respondents' burden.

In the unofficial hearing transcript, the IJ appears to rely primarily on Landeros Jimenez's conviction to establish both dangerousness and flight risk. *See* Dkt. No. 18, Ex. FF. But Landeros Jimenez was convicted of acting as an accessory after the fact to his brother's possession of methamphetamine for sale. *See* Dkt. No. 18, Ex. DD at 14. The arrest report contains no indication of violence in connection with that crime or, indeed, any facts regarding Landeros Jimenez's conduct. *See id.* at 28. Further, Landeros Jimenez apparently has no criminal history outside of his conviction for accessory after the fact to suggest that he would be a danger to the community. *See id.*

In response, Respondents point to the IJ's October 1, 2019, decision ordering Landeros Jimenez's removal as a "critical piece of evidence." Dkt. No. 21 at 20. That piece of evidence does not help Respondents' position.[1] It fills no fact-finding gaps left by the arrest report and conviction documents. Although the IJ found that Landeros Jimenez's conviction was a "particularly serious crime," a "particularly serious crime" is not synonymous with dangerousness or risk of flight. *See id.* at 48–49 & n.2 (noting that danger to the community is a separate determination). Put simply, the record is devoid of any evidence suggesting Landeros Jimenez is dangerous or a flight risk.

---

[1] Indeed, some of the IJ's findings appear to cut the other way. *See, e.g.*, Dkt. No. 18, Ex. DD at 47 (noting Landeros Jimenez's 11-year residence in the United States and ability to hold three jobs simultaneously).

Respondents also failed to show that alternatives to detention would be inadequate. The IJ's sole statement regarding alternatives to detention was that "a bond would [not] be appropriate . . . because I don't think there's any way [Landeros Jimenez will] be able to remain in the United States." Dkt. No. 18, Ex. FF at 10. Respondents' failure to show that there are no less restrictive alternatives to detention is error. *Hernandez*, 872 F.3d at 991.

In short, Landeros Jimenez has shown a strong likelihood of success on the merits.

### 2. Irreparable Harm

"[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Landeros Jimenez has been deprived of both his due process rights and his right to be free from unlawful detention. This deprivation is ongoing and constitutes irreparable harm.

### 3. Balance of Equities and Public Interest[2]

The balance of equities and public interest both weigh in Landeros Jimenez's favor. His continued detention causes significant harm in the form of the deprivation of constitutional rights. In contrast, the harm to Respondents' is minimal if appropriate conditions of supervision are imposed. Accordingly, the Court GRANTS Landeros Jimenez's motion for a temporary restraining order.

## III. Conclusion

The Court GRANTS Landeros Jimenez's motion for a temporary restraining order. Respondents must release Landeros Jimenez immediately under appropriate conditions of supervision, such as an ankle monitor and reporting requirements.

**IT IS SO ORDERED.**

Dated: March 6, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

---

[2] The balance of hardships and public interest factor merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

7